## Garrity v. Nowicki

C.P. of Bucks County, no. AO6-93-63720-E-18.

*Lynn Z. Gold-Bikin,* for plaintiff.
*Miriam Reimel,* for defendant.

LAWLER, *J.,* September 8, 1998—Plaintiff Margaret A. (Nowicki) Garrity, Wife, appeals our order of July 1, 1998, finding her in contempt of court for violating the terms of an agreed court order which directed her to name Robert E. Nowicki, Husband, as a beneficiary on $50,000 worth of life insurance.

## BACKGROUND

The parties were divorced on February 16, 1995. N.T. 6/10/98 at 11; exhibit P-1. By agreed order of the same date, the parties entered into a property settlement agreement, which was incorporated into the divorce decree. *Id.* With respect to naming Husband as beneficiary on Wife's life insurance policies, the agreement provided:

"Wife agrees to name Husband as a beneficiary on $50,000 worth of life insurance policies. Wife will determine which policies that beneficiary destination [sic] will apply to." Exhibit P-1; N.T. 2/16/95 at 7-8.

Subsequently, the parties agreed that Husband was to be named irrevocable beneficiary on $50,000 worth of Wife's life insurance policies. N.T. 6/10/98 at 37.

At the time of the agreement on February 16, 1995, Wife had three life insurance policies:

(1) A $100,000 State Farm whole life policy [policy no. LF-0922-6734] naming the parties' children as beneficiaries. N.T. 6/10/94 at 15, 38.

(2) A $30,000 State Farm 10-year term policy [policy no. LF-0766-14455]. N.T. 6/10/98 at 15.

(3) A $35,000 State Farm 10-year term policy [policy no. LF-1412-9780]. N.T. 6/10/98 at 14.

After the divorce, Wife changed the beneficiary on the $100,000 whole life policy [policy no. LF-0922-6734], designating Husband as a revocable partial beneficiary to the extent of $50,000. Exhibit P-2; N.T. 6/10/98 at 38. She also named him as irrevocable sole beneficiary on the $30,000 policy [policy no. LF-0766-14455]. N.T. 6/10/98 at 40. Finally, she named him as an irrevocable partial beneficiary to the extent of $20,000 on the $35,000 policy [policy no. LF-1412-9780]. N.T. 6/10/98 at 40, 68-69.

On or about January 8, 1998, Husband learned that the second policy [policy no. LF-0766-14455 for $30,000] had lapsed in December of 1997 due to non-payment of premiums. N.T. 6/10/98 at 21, 47. As a result, Husband was named irrevocable beneficiary only to the extent of $20,000 (*i.e.* on policy no. LF-1412-9780), and Wife fell $30,000 short of the required $50,000 in life insurance policies naming Husband irrevocable beneficiary.

Consequently, on March 4, 1998, Husband filed a petition for special relief for the enforcement of property settlement agreement and contempt of court. In her

answer,[1] Wife admits that the policy lapsed as a result of her failure to pay the premiums. See answer at ¶¶6-7; N.T. 6/10/98 at 48. She, however, argues that, under the agreement, she had no obligation to maintain the policies, as Husband was obliged to maintain the policies. *Id.* at ¶7.

We held a hearing on June 10, 1998. The testimony revealed that at the time of the hearing, Wife had three life insurance policies in force. N.T. 6/10/98 at 39. They are:

(1) The $100,000 State Farm whole life policy [policy no. LF-0922-6734] naming Husband as revocable partial beneficiary to the extent of $50,000.

(2) The $35,000 State Farm term policy [policy no. LF-1412-9780] naming Husband irrevocable partial beneficiary to the extent of $20,000. N.T. 6/10/98 at 48, 66, 68-69.

(3) A $50,000 whole life policy with Life and Health of America naming Husband as the revocable beneficiary.[2] N.T. 6/10/98 at 49, 50, 54.

By order dated July 1, 1998, we found Wife in contempt of court as a result of her breach of the agreement's provision requiring her to name Husband as an irrevocable beneficiary on $50,000 worth of life insurance policies. In that order, we provided that Wife could purge herself of the contempt by (1) executing the nec-

---

1. Wife also filed a counterclaim against Husband, seeking payment of her attorney fees on the ground that Husband's petition was frivolous, meritless and for the purpose of harassment. In our order of July 1, 1998, we denied Wife's counterclaim, and Wife has not appealed that decision.

2. When Wife realized that the parties were not going to settle this matter, in January of 1998, Wife changed the beneficiary on this policy from her children to Husband. N.T. 6/10/98 at 49. However, that beneficiary designation is revocable. N.T. 6/10/98 at 50.

essary documents with the insurer to ensure that life insurance policy no. LF-1412-9780, with a death benefit of $35,000, was in full force and to ensure that Husband was named irrevocable sole beneficiary; (2) by executing the necessary documents to amend the beneficiary designation on life insurance policy no. LF-0922-6734 to name Husband irrevocable primary beneficiary with a death benefit of $15,000; and (3) to execute forms naming Husband "special billing party" to enable him to receive notice when Wife failed to timely pay the premiums on the two specified policies or when the policies were otherwise diminished. We also ordered that, if Wife fails to timely pay the premium on the specified policies and Husband pays that premium, Husband shall deduct from his next alimony payment to Wife the amount of the premium he paid plus an additional $100 for each premium paid.

## ISSUES

In her amended concise statement of matters complained of on appeal, Wife cites the following five errors:

"(1) The trial court erred by ordering plaintiff to maintain specific insurance policies naming defendant as beneficiary, contrary to the agreed court order dated February 16, 1995 that expressly gives plaintiff the ability to unilaterally 'determine which policies' to obtain on defendant's behalf.

"(2) The trial court erred in ordering plaintiff to execute forms required by State Farm Insurance Company for purposes of naming defendant as 'special billing party,' resulting in an unnecessarily invasive and overly intrusive infringement of plaintiff's privacy in a manner not afforded under the agreed order.

"(3) The trial court erred in ordering plaintiff to pay for the insurance on defendant's behalf, despite the

fact that the agreed order never required plaintiff to pay for the costs to obtain or maintain any life insurance on defendant.

"(4) The trial court erred in ordering that defendant may deduct the amount of any premium not paid by plaintiff for life insurance on behalf of defendant from plaintiff's next alimony payment, 'plus an additional $100 for each payment as necessary,' thus penalizing plaintiff for nonpayment of something she was never obligated to pay in the first instance.

"(5) The trial court erred in ordering that the insurance policies maintained by plaintiff on defendant's behalf may 'not be pledged as collateral for any loan, or otherwise encumbered or reduced in value,' thereby imposing conditions on plaintiff that were never set forth in the agreed order."

## DISCUSSION

(1) *We did not err in ordering Wife to maintain specific insurance policies naming Husband as beneficiary.*

Wife claims that, because the agreement gave Wife the right to unilaterally "determine which policies" to obtain on Husband's behalf, we erred in directing her to maintain the two specified policies on behalf of Husband. See amended statement of matters complained of on appeal. We disagree.

The agreement gave Wife the right to determine on which policies she would designate Husband as beneficiary so long as Wife named husband as a beneficiary on $50,000 worth of life insurance policies. Exhibit P-1 at 7-8. When Wife allowed policy no. LF-0766-14455 for $30,000 to lapse, Wife was in breach of the agreement. Subsequent to the lapse, which occurred in December of 1997 [N.T. 6/10/98 at 47], Wife did

not take steps to designate Husband as irrevocable beneficiary on other policies to make up for the $30,000 shortfall caused by the lapse. Although Wife did take out a new insurance policy with Life and Health of America, in which she named Husband as a beneficiary for the amount of $50,000, that beneficiary designation was revocable and thus failed to satisfy Wife's obligations under the agreement as amended.

By the hearing on June 10, 1998, Wife had not made up for the $30,000 shortfall with respect to naming Husband irrevocable beneficiary, despite having had six months to do so. Wife also testified that she wanted to change the beneficiary designation on the $35,000 State Farm policy [policy no. LF-1412-9780] from her Husband to her children[3]—despite the fact that she was in violation of the agreement. N.T. 6/10/98 at 55. Accordingly, we did not err by requiring Wife to make up for the $30,000 shortfall by directing her to name Husband as irrevocable sole beneficiary for the full amount of $35,000 on policy no. LF-1412-9780 and irrevocable primary beneficiary to the extent of $15,000 on policy no. LF-0922-6734.

(2) *Our order that Wife name Husband as "special billing party" was not an unnecessarily invasive and overly intrusive infringement of Wife's privacy.*

Wife contends that we erred in ordering her to execute the necessary forms to name Husband as "special billing party." See amended statement of matters complained of on appeal. Designation as a "special billing party" permits Husband to receive notice whenever Wife fails to timely pay the premiums on the policies. N.T. 6/10/98 at 22-23. Such designation would enable Husband to

---

3. The parties' children were 32 and 36 years of age at the time of the hearing. N.T. 6/10/98 at 58.

be informed whenever the policy is in danger of lapsing. *Id.* Wife argues that so designating Husband would result "in an unnecessarily invasive and overly intrusive infringement of plaintiff's privacy in a manner not afforded under the agreed order." See amended statement of matters complained of on appeal.

At the hearing, Wife asserted that naming Husband as "special billing party" would be an invasion of her privacy because he would have access to her bills for her health insurance, car insurance, homeowners insurance and other life insurance policies. N.T. 6/10/98 at 45. However, our order made clear that Husband was the "special billing party" only as to the two specified life insurance policies. Wife's failure to abide by the agreement by allowing one of the policies to lapse necessitated our giving Husband the right to receive notice whenever Wife failed to pay the premium on the two specified policies so that in the future he could prevent those policies from lapsing. Our order limited Husband's right to receive notices to the two specified life insurance policies necessary to comply with the agreement. Thus, Husband is not entitled to notice of Wife's failure to pay any other insurance premiums. Accordingly, there will no invasion of Wife's privacy as to those other policies.

As to the two specified life insurance policies, any invasion of Wife's privacy has been necessitated by Wife's failure to abide by the agreement. On or about November 27, 1997, Wife received a notice from the insurance company that the dividends could no longer pay the premiums on policy no. LF-0766-14455. N.T. 6/10/98 at 46. When Wife did not pay the premiums, the policy lapsed in December of 1997. N.T. 6/10/98 at 47. By the time Husband learned that the premiums had not been paid and that the policy had lapsed, it

was too late to have it reinstated. Rather than risk Wife's nonpayment of future premiums and a lapse in coverage, we directed that Husband receive notice of any unpaid premiums so that he could protect his interest. Any privacy interest that Wife may have in not having the bills sent to Husband is outweighed by Husband's interest in ensuring that additional life insurance policies do not lapse.

(3) *We did not err in ordering Wife to pay the insurance premiums.*

Wife claims that we erred in ordering her to pay for the insurance premiums on the specified policies designating Husband as beneficiary. She argues that the agreement did not require Wife to pay for, obtain or maintain any life insurance on Husband. See amended statement of matters complained of on appeal.

The agreement provides, "Wife agrees to name husband as a beneficiary on $50,000 worth of life insurance policies." Although it does not explicitly state that Wife is to pay the premiums on the policies, the parties' conduct subsequent to that agreement demonstrates that both parties understood the agreement as requiring Wife to maintain the policies.

Prior to the divorce, Husband paid the premiums on Wife's three life insurance policies. N.T. 6/10/98 at 16. After the divorce, notices that the premiums were due were sent to Wife, and Husband did not receive any notices concerning the premiums. N.T. 6/10/98 at 17-18, 44. Wife never asked the insurer to send the notices to Husband. *Id.* Wife made at least "a couple of payments." N.T. 6/10/98 at 42. Then she paid the premiums through dividends. N.T. 6/10/98 at 42, 70. She made the payments after speaking to her lawyer. N.T. 6/10/98 at 56. Wife maintained the lapsed $30,000 State Farm term policy until November of 1997. She

has maintained the $35,000 State Farm term policy at least up to June 10, 1998, the date of the hearing. Prior to December of 1997, Wife did not inform Husband that she had stopped paying the premiums on the $30,000 policy. N.T. 6/10/98 at 18. Nor did she ask Husband to pay the premiums. N.T. 6/10/98 at 43.

On or about December 21, 1997, Wife asked Husband if there was a way she could continue to protect Husband's life insurance interests without paying the premiums, as she did not want to pay the premiums. N.T. 6/10/98 at 19, 57. Wife stated that she knew she would be violating the terms of the agreement and did not want to be held in contempt. N.T. 6/10/98 at 74. Although Wife suggested that she could make Husband a beneficiary of her estate, Husband was not agreeable and was not willing to give up his interest in the life insurance policies pursuant to the agreement. N.T. 6/10/98 at 20-21, 57. Neither during that conversation nor previously did Wife tell Husband that it was her position that, under the terms of the agreement, she did not have to pay the premiums. N.T. 6/10/98 at 43.

Also, when Husband learned on January 8, 1998 that one of the policies had lapsed, he asked to be made a special billing party whereby he would receive notice of any unpaid premiums. N.T. 6/10/98 at 45. However, Wife refused because she considered it an invasion of her privacy. *Id.* That Wife would consider it an invasion of her privacy for Husband to receive notice of an unpaid premium indicates that she believed it was her responsibility to pay the premium.

Finally, in January of 1998, Wife applied for an additional $50,000 whole life policy with Life and Health of America, designating Husband as beneficiary. N.T. 6/10/98 at 49. That policy was issued in March of 1998. *Id.* Wife testified that she applied for the policy when she realized that the parties were not going to resolve the payment of the premium. N.T. 6/10/98 at

49. Wife has paid the $170 monthly premiums on that policy from the date it was issued up to the date of the hearing. N.T. 6/10/98 at 51-52. Accordingly, the parties' conduct reflected their view that Wife was responsible for the maintenance of the policies.

(4) *We did not err in permitting Husband, in the event Wife fails to timely pay a premium, to pay the premium and deduct the amount of the premium plus an additional $100 from Wife's next alimony payment.*

Wife asserts that we erred in permitting Husband, in the event Wife fails to timely pay a premium, to pay the premium and deduct the amount of the premium plus an additional $100 from Wife's next alimony payment for each unpaid premium. She contends that our order penalizes Wife for "nonpayment of something she was never obligated to pay in the first instance." See amended statement of matters complained of on appeal.

We disagree for four reasons. First, as discussed under section 3, *supra*, Wife was obligated to maintain the insurance policies. Second, our order was necessitated by Wife's failure to maintain the requisite amount of insurance. Third, the additional $100 to be deducted will not significantly reduce Wife's income. Wife receives $4,300 per month in alimony and earns approximately $26,000 per year as a travel agent. N.T. 6/10/98 at 25, 51-52. Finally, this provision will encourage Wife to comply with the court's order.

(5) *We did not err in ordering that the specified policies may not be pledged as collateral or otherwise encumbered or reduced in value.*

Wife claims that we erred in ordering that the specified insurance policies may "not be pledged as collateral for any loan, or otherwise encumbered or reduced in value. . . ." She asserts that our order imposed conditions that were not part of the agreement. See amended statement of matters complained of on appeal.

Again we disagree. We entered that order because of Wife's failure to maintain one of the life insurance policies pursuant to the agreement, allowing the policy to lapse. Wife also testified as to her financial straits. Accordingly, our order was proper to ensure that Wife complies with the agreement.

For the foregoing reasons, pursuant to 23 Pa.C.S. §3502(e), we entered our order of July 1, 1998.